UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Michael and Marisol MacDonald

   v.                                    Civil No. 06-cv-245-JD
                                         Opinion No. 2007 DNH 139
Town of Windham, et al.


O R D E R

Michael and Marisol MacDonald bring federal civil rights claims pursuant to 42 U.S.C. § 1983, along with related state law claims, against Marisol's former husband, Randy Guilbault, Windham Police Officer Daniel Clark, and the Town of Windham. The MacDonalds' claims arise from the circumstances of Michael MacDonald's arrest by Clark on August 1, 2004, on a charge of disorderly conduct. Clark and the town moved for summary judgment and Guilbault joins their motion. The MacDonalds object to the motion.


Background

Marisol married Randy Guilbault in July of 1987, and they have two children, Brandon and Kyle Guilbault. In April of 2002, the Guilbaults began divorce proceedings; they were divorced on January 2, 2003. Marisol and Michael MacDonald were engaged in April of 2004 and were married in August of 2004. Michael has

two children from a previous marriage. During the spring of 2004, custody and visitation disputes arose about the Guilbault children's visits with their father.

The Windham police became involved in the custody and visitation disputes when Guilbault called them for assistance in the process of exchanging children for visits on eight occasions. The MacDonalds acknowledge that Guilbault had court-ordered visitation rights on all of the days on which incidents occurred, except possibly one, May 21. The MacDonalds nevertheless disputed Guilbault's visitation rights, and Marisol "filed paperwork in the Nashua District Court seeking to revoke Guilbault's overnight visitations for various reasons."[1]  Obj. at 3.

Officer Daniel Clark responded to two calls about visitation issues, one on April 30 and the other on May 21. Officers Gregory Malisos and Jessica Flynn, Captain Patrick Yatsevich, and Sergeant Carl Wagner responded on other occasions. The MacDonalds videotaped some of these events.

The DVD produced by the MacDonalds of their videotapes shows that the MacDonalds were agitated and angry during the incidents,

---

[1]During the time of the events in question, Marisol's name was Marisol Guilbault. To avoid confusion, the plaintiffs are nevertheless referred to as the MacDonalds.

2

arguing with Guilbault, accusing Guilbault of lying and of stalking Marisol, accusing the police of misconduct, and arguing loudly with the police officers. Michael MacDonald ordered Guilbault and a police officer away from his property during one incident. During another incident, Marisol became so agitated that she reached out, gesticulating with her hands and touching the police officer. Marisol states in her affidavit that she also touched the officer on his arm while talking with him in his cruiser and that the officer told her that she was assaulting him.[2]

The MacDonalds also videotaped Guilbault at the children's baseball games. On July 8, 2004, the MacDonalds attended a youth all-star baseball game at the town field. Michael was an assistant coach for one of the teams, and his son, Michael Jr., and Marisol's son, Kyle Guilbault, played on the team. Randy Guilbault brought his sons to the game and stayed to watch. When he arrived at the field, the MacDonalds began to videotape him.

The videotape shows that Guilbault walked toward the MacDonalds, and Marisol asked Brandon to go speak to his father.

---

[2]That incident arose when the MacDonalds delayed the Guilbault children's visit with their father by an hour but refused to extend the visit for an hour. The children had to be exchanged at the police station.

3

Guilbault called the Windham police to report that MacDonald was harassing him by videotaping him and asked for help. Officer Clark responded to the call and arrived at the baseball field a few minutes later. Clark first talked with Guilbault, who complained that Michael MacDonald was following him with a video camera, and then walked toward the MacDonalds, with Guilbault walking behind him. Michael MacDonald videotaped Clark as he approached.

Clark asked MacDonald what was going on with the video camera. Mot. Ex. 5 at 26:02. MacDonald asked if videotaping were illegal, repeating his statement several times with increasing volume and vehemence. Guilbault walked to the stands and sat down. The videotape shows two women sitting next to the stands with an umbrella shading them and a child sitting on one woman's lap. Mot. Ex. 5 at 26:15. Marisol and Michael told Clark that they had all been in court that morning to address Marisol's charges that Guilbault was following her, assaulting her, and calling the police.

Michael MacDonald and Guilbault exchanged remarks - - Guilbault said quietly that Michael should not be there. MacDonald responded loudly that he was a coach of the team. Guilbault agreed but said that the judge told MacDonald not to be there. MacDonald responded angrily and loudly: "You are lying

4

again."  MacDonald then asked Guilbault to repeat what he had previously said.  In the background, one or both of the women sitting next to the stands can be heard saying, "Come on, enough," and other remarks that are less distinct.  Mot. Ex. 5 at 26:33-38.  Guilbault responded to their concern by asking Michael, in a quiet voice, to calm down.

The videotape then jiggled out of control and eventually stabilized on scenes of people watching the baseball game and Guilbault using his cell phone.  The MacDonalds assert that when the video camera was turned off, Clark's "demeanor became extremely unpleasant," that he accused Michael of harassing Guilbault, that he ordered Michael to stop talking to Guilbault, and that he warned Michael that he would be arrested if he said anything else.  Obj. at 8.  Marisol states in her affidavit that Clark also ordered her not to talk to Guilbault and to go to the other side of the field.  The parties agree that the situation resolved when Michael MacDonald resumed his coaching duties and Marisol went to the other side of the baseball field.

Officer Clark testified in his deposition that he came to the baseball field in response to Guilbault's call.  He found Michael MacDonald videotaping and asked him why he was doing that.  Clark testified that MacDonald asked him repeatedly whether it was illegal to videotape and that MacDonald and

5

Guilbault exchanged words. At that time, Patricia Petron, one of the parents watching the game, asked both MacDonald and Guilbault to stop and said that she was sick of the kids having to see this, and Clark also asked them to stop. Clark described Guilbault's voice as a normal speaking tone and MacDonald's voice as "extremely raised" or yelling. Guilbault testified to similar events at the July 8 baseball game and also remembered that Patricia Petron asked them to stop arguing.

Patricia ("Trish") Petron, whose husband was head coach of the team the MacDonald and Guilbault boys played on, stated that MacDonald was talking loudly to Clark and that Clark's voice was very low. She also stated that the MacDonalds and Guilbault were arguing loudly and that she asked them to be quiet because children were there. She stated that Michael MacDonald was doing the majority of the loud arguing and that he would not stop.[3] Petron also testified at a bench trial in January of 2006 on the disorderly conduct charge against Michael MacDonald. She related the same circumstances during her testimony and said that she was upset because children were present. Both Marisol and Michael

---

[3] Petron provided a statement to Clark about the incident, testified at Michael MacDonald's trial, and provided an affidavit in support of the defendants' motion for summary judgment.

6

MacDonald state in their affidavits that Petron said nothing during the July 8 incident.[4]

After the July 8 incident, the videotape shows scenes of a baseball field on July 10. Michael MacDonald initially remarked, "the coast is clear." Marisol said that Guilbault did not bring Kyle to the game, and that the team lost because Kyle did not come.

Clark asked Petron if he could bring a report form for her to fill out about the July 8 incident. Petron said that she did not want her son to be involved or to see a police officer at their house. Clark offered to drop the form off in Petron's mailbox when his shift ended late that night, and she agreed. Petron completed her statement about the incident, which is undated and unsigned, but she is not sure of the date she completed it. Clark also asked Guilbault to submit a statement

---

[4]The MacDonalds contend that Petron's lack of specific memory of certain parts of the incident at her deposition on September 27, 2007, undermines her more specific affidavit dated August 1, 2007. A party cannot provide an affidavit that contradicts other testimony for the purpose of avoiding summary judgment. See Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., 447 F.3d 105, 110 (1st Cir. 2006). That, however, is not the case here. Petron is not a party. In addition, she stated at her deposition that she was relying on her statement about the incident that was written and submitted to the Windham police soon after the incident occurred.

7

about the incident, which he did.  Clark did not pursue other witnesses from the July 8 incident.

Clark began to write his report of the July 8 incident that day, but did not finish it.  He was not then sure whether he would charge MacDonald.  Clark believed he had probable cause to arrest Michael MacDonald during the incident on July 8 but decided not to do so because MacDonald was a coach of the team and players and their parents were nearby.  Instead, he discussed the situation with Sergeant Occipinti and the police prosecutor who both confirmed that probable cause existed for MacDonald's arrest.

Marisol MacDonald wrote a letter to the Chief of Police in Windham, dated July 9, 2004, in which she described the July 8 incident and accused Guilbault of stalking, harassing, and assaulting her, of lying, and of intending to abuse and hurt her.  She stated in the letter that she and Michael were minding their own business and also discussed videotaping Guilbault.  She stated:  "We had never moved, gestured or said a word toward Randy Guilbault."  Obj. Ex. 18.  She accused the Windham police of threatening arrest, of harassing her and Michael, and of doing Guilbault's bidding.  In closing, Marisol stated that she believed the police were acting in violation of the law and warned that "[i]f I do not get the needed protection from the

8

Windham Police Department and Randy Guilbault does succeed in hurting me, I will hold you fully responsible." Id.

On July 20, Guilbault called his attorney, the Windham police department, and Petron. Neither Guilbault nor Petron recall what Guilbault called about. He also called the MacDonalds several times to set up an early exchange of children after his weekend visitation. The exchange was to happen at the Windham police station. The police call log shows that Guilbault called the Windham police twenty-six times between April 30 and the end of July 2004.

Clark completed his report about the July 8 incident on July 23. On July 26, Clark completed an affidavit to support a request for a warrant to arrest Michael MacDonald for disorderly conduct in violation of New Hampshire Revised Statutes Annotated ("RSA") § 644:2. The affidavit submitted in support of the warrant application states the following:

> 1. On Thursday July 08, 2004 at approximately 6:01 PM Officer Daniel C. Clark responded to Roger's Ball Field on Cobbetts Pond Road for a harassment report.
> 2. Officer Daniel C. Clark spoke with Randy Guilbault. Guilbault told Officer Daniel C. Clark that Michael MacDonald was video taping him and he wanted it to stop.
> 3. Officer Daniel C. Clark tried speaking with Michael MacDonald, but was not able to because Michael MacDonald was yelling at him in front of several children and parents.

9

> 4.  Michael MacDonald proceeded to yell at Randy Guilbault.
> 5.  A witness, Trish Petron, asked Michael MacDonald and Randy Guilbault to stop arguing in front of the children.
> 6.  Despite being asked by Officer Daniel C. Clark and Trish Petron to stop arguing and yelling, Michael MacDonald continued to yell, which was loud and unreasonable and in an area in which [sic] was open to the general public.
> 7.  Based on the foregoing facts and information, Officer Daniel C. Clark is requesting an arrest warrant be granted, charging Michael MacDonald 03-26-1958 with the crime of Disorderly Conduct, as described in N.H. RSA 644:2(III)(a).

Mot. Ex.4, at 15. Clark obtained an arrest warrant, signed by a justice of the peace, the same day.

During the evening of August 1, Clark and Sergeant Caron went to the MacDonalds' home to arrest Michael. He was grilling in preparation for dinner when the officers arrived. Michael went to the front door, and Clark told him that he had a warrant for his arrest and would have to handcuff him. Michael asked not to be handcuffed in front of the children, which Clark initially refused, but Caron ordered the handcuffs to be put on outside near the car.

Michael was booked and locked in a cell until he was released on bail sometime later. A one-day bench trial was held on the charge in Salem District Court on January 18, 2005. MacDonald was found not guilty.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

## Discussion

Michael and Marisol MacDonald bring federal claims under § 1983 against Clark and the Town of Windham.[5] They contend that

---

[5] Despite the prolix nature of their complaint, which makes a variety of allegations, including excessive force, negligence, and malicious prosecution, to support civil rights claims under the Fourth and Fourteenth Amendments, the MacDonalds have substantially narrowed the focus of those claims in response to the motion for summary judgment. Therefore, their claims of

Clark arrested Michael without probable cause and conspired with others to cause Michael to be deprived of his Fourth Amendment rights. They also contend that a custom or policy of the Town of Windham caused Clark to arrest Michael without probable cause. The MacDonalds also allege eight related state law claims. The defendants move for summary judgment.

I. Federal Claims

The MacDonalds allege that Michael was arrested without probable cause on a charge of disorderly conduct, under RSA 644:2, in violation of the Fourth Amendment. Based on that allegation, they contend that Clark conspired with Guilbault to deprive Michael of his Fourth Amendment rights. Further, they contend that Windham failed to adequately train Clark, which resulted in the alleged civil rights violation.

A. Validity of the Arrest

An arrest pursuant to a warrant supported by probable cause satisfies the Fourth Amendment. Kalina v. Fletcher, 522 U.S.

---

excessive force under the Fourth Amendment and their Fourteenth Amendment claims are deemed to be waived. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999).

12

118, 129 (1997); Baker v. McCollan, 443 U.S. 137, 149 (1979). Probable cause for an arrest exists when "'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" United States v. Almeida, 434 F.3d 25, 28 (1st Cir. 2006) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).

"Probable cause is an objective matter, and not determined by subjective intent." Lewis v. Kendrick, 944 F.2d 949, 953 (1st Cir. 1991). "The exact degree of certainty required to establish probable cause is difficult to quantify; it falls somewhere between bare suspicion and what would be needed to justify conviction." Burke v. Town of Walpole, 405 F.3d 66, 80 (1st Cir. 2005) (internal quotation marks omitted). "In sum, the existence of probable cause (and, in turn, the validity of an ensuing arrest) is gauged by an objective standard; as long as the circumstances surrounding the event warrant the officer's reasonable belief that the action taken is appropriate, the arrest is justified." Loque v. Dore, 103 F.3d 1040, 1044 (1st Cir. 1997).

The court "pay[s] substantial deference to judicial determinations of probable cause made by a magistrate issuing a

warrant, [but the court] must still insist that the magistrate not serve merely as a rubber stamp for the police." Burke, 405 F.3d at 79.  "A Fourth Amendment violation may be established if a plaintiff can show that officers acted in reckless disregard, with a high degree of awareness of the probable falsity of statements made in support of an arrest warrant." Id. at 81 (internal quotation marks omitted).

    Michael MacDonald was charged with violating RSA 644:2, III, which provides in pertinent part that:  "A person is guilty of disorderly conduct if:  He purposely causes a breach of the peace, public inconvenience, annoyance or alarm, or recklessly creates a risk thereof by:  (a) making loud or unreasonable noises in a public place, . . . which noises would disturb a person of average sensibilities . . . ."  Clark's affidavit in support of the arrest warrant states that "Michael MacDonald was yelling at [Clark] in front of several children and parents," "Michael MacDonald proceeded to yell at Randy Guilbault," "[a] witness, Trish Petron, asked Michael MacDonald and Randy Guilbault to stop arguing in front of the children," and "[d]espite being asked by Officer Daniel C. Clark and Trish Petron to stop arguing and yelling, Michael MacDonald continued to yell, which was loud and unreasonable and in an area in which was open to the general public." Mot. Ex. 4 at 15.  Those

14

circumstances support a reasonable belief that MacDonald was purposefully making loud noises in a public place which would, and did, disturb a person of average sensibilities, in violation of RSA 644:2, III.

In response, the MacDonalds contend, supported by their affidavits, that Michael did not yell or raise his voice during the entire incident on July 8. Although that may be their memory of what occurred, their own videotape excerpt of the July 8 incident does not support their version of events. Instead, MacDonald can be heard talking in an unusually loud and angry voice, which could reasonably be described as yelling. His interaction with Clark is in an unnecessarily loud and angry voice and he can be heard accusing Guilbault of lying in a loud and angry voice with parents and children in the immediate area. Trish Petron wrote in her police statement about the incident and stated in her affidavit that Michael MacDonald was very loud during the July 8 incident. The evidence supports Clark's affidavit that was submitted in support of his request for an arrest warrant.

The MacDonalds contend that Petron did not say anything during the incident, which is contrary to Petron's testimony and her affidavit and contrary to Clark's and Guilbault's

15

recollections of the incident.[6]  In addition, the MacDonalds' videotape excerpt from the incident supports the version of events provided by Petron, Clark, and Guilbault.[7]  During the July 8 incident when MacDonald accuses Guilbault of lying in a loud and angry voice, Guilbault can be seen looking away from MacDonald and toward two women who were sitting in chairs next to the stands.  A woman can be heard in the background asking MacDonald to stop.  Guilbault then quietly asks MacDonald to calm down.

The MacDonalds also cite circumstances that they believe imply that Clark was conspiring or collaborating with Guilbault to harass them as evidence of a lack of probable cause for the arrest.  Even if the evidence they cite would support such a theory, the evidence would not be material to whether or not probable cause existed to arrest MacDonald because the existence

---

[6] The MacDonalds' affidavits include another inaccuracy in their description of the July 8 incident when compared to what is shown in their videotape.  Marisol and Michael stated in their affidavits that Officer Clark did not look at Michael when Michael asked if videotaping were illegal.  Obj. Ex. 4 at 6; Ex. 6 at 9.  The videotape, however, shows Clark looking directly at the camera while Michael asks in a raised voice whether videotaping is illegal and then looking next to the camera, which may be at Marisol.  Mot. Ex. 5 at 26:02.

[7] The MacDonalds represent that the videotape was not edited and presents an accurate account of the incident to the extent it was filmed.

16

of probable cause is not affected by the subjective intent of the officer involved. In other words, even if Clark were acting based on an improper motive, which the evidence does not show, as long as probable cause supported the arrest, no Fourth Amendment violation occurred. See, e.g., Mann v. Cannon, 731 F.2d 54, 63 (1st Cir. 1984) (holding that officer's motive making an arrest not material and noting general rule that "the validity of an arrest is normally gauged by an objective standard rather than by inquiry into the officer's presumed motives." (internal quotation marks omitted)).

Because the record evidence shows that probable cause existed to support the warrant for Michael MacDonald's arrest on the disorderly conduct charge, the defendants are entitled to summary judgment on the plaintiffs' claim that the arrest violated the Fourth Amendment.[8] In the absence of a constitutional violation, no grounds exist to support the MacDonalds' claims of a civil rights conspiracy. See Thorne v. Howe, 466 F.3d 173, 179 (1st Cir. 2006). Therefore,

---

[8] As is noted above, although the MacDonalds alleged claims of excessive force in violation of the Fourth Amendment and other claims under the Fourteenth Amendment, which the defendants addressed in their motion for summary judgment, the MacDonalds did not pursue those claims in their objection to summary judgment. Their other federal claims, therefore, are deemed to be waived.

summary judgment is granted in favor of the defendants on all of the plaintiffs' federal claims.

II.  State Law Claims

The MacDonalds contend that Michael's arrest on the disorderly conduct charge also constituted false imprisonment, assault and battery, intentional infliction of emotional distress, and malicious prosecution.  Marisol MacDonald claims loss of consortium.  The defendants move for summary judgment on the state law claims.

Jurisdiction in this case is based on the existence of a federal question, the plaintiffs' civil rights claims under 42 U.S.C. § 1983.  28 U.S.C. § 1331.  When, as here, the claims which were the basis for original jurisdiction have been resolved well before trial, the court has discretion to decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c)(3); Marrero-Gutierrez v. Molina, 491 F.3d 1, 7 (1st Cir. 2007).  That is the appropriate outcome in this case.  Therefore, the court declines to exercise jurisdiction over the plaintiffs' state law claims, which are dismissed without prejudice for lack of jurisdiction.

18

Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 21) is granted as to the plaintiffs' federal claims, and is denied as to the plaintiffs' state law claims. The plaintiffs' state law claims are dismissed without prejudice due to a lack of subject matter jurisdiction.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

November 16, 2007

cc: Steven A. Bolton, Esquire
    Brian J.S. Cullen, Esquire
    Benjamin L. Falkner, Esquire
    Donald E. Gardner, Esquire
    Paul J. Klehm, Esquire
    James B. Krasnoo, Esquire
    Danielle Leah Pacik, Esquire