UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Michael MacDonald and
Marisol MacDonald

        v.                              Civil No. 06-245-JD

Daniel Clark, Town of Windham,
and Randy Guilbault

O R D E R

        Michael MacDonald brought civil rights claims, pursuant to
42 U.S.C. §§ 1983 and 1985, and Michael and Marisol MacDonald
brought state law claims against Daniel Clark, a police officer
in Windham, New Hampshire; the Town of Windham, and Randy
Guilbault, Marisol's former husband.[1]  On November 16, 2007, the
court granted the defendants' motions for summary judgment on the
federal claims and declined to extend supplemental jurisdiction
to the state law claims, which were dismissed without prejudice.
The defendants move pursuant to 42 U.S.C. § 1988(b) for an award
of attorneys' fees and costs.  The MacDonalds oppose an award of
fees but do not oppose the motion for costs.

---

        [1]Marisol's only claim was for loss of consortium, which was
dismissed without prejudice.

<u>Background</u>

Marisol and Randy Guilbault were married for five and one half years, before they divorced, and they have two children. Marisol then married Michael MacDonald in August of 2004.  During the events that were at issue in this case, which occurred between April and August of 2004, the parties were embroiled in custody and visitation disputes, particularly involving the Guilbault children's visits with their father.

Guilbault had court-ordered visitation rights, but Marisol disapproved of the children visiting with their father.  As a result, a number of confrontations occurred.  Guilbault sought assistance from the Windham police with the process of exchanging the children for visits.  Guilbault called the Windham police twenty-six times between April 30 and the end of July in 2004. Michael MacDonald videotaped the interactions involving himself, Marisol, and Guilbault when they were exchanging children for visitations and attending the children's baseball games.

On July 8, 2004, at a youth baseball game, the MacDonalds videotaped Guilbault after he brought his sons to the game and stayed to watch.  Guilbault called the Windham police to report that Michael MacDonald was harassing him by videotaping him. Officer Clark responded.  MacDonald videotaped Clark as he approached and also videotaped part of the exchange that

2

followed, in which Michael MacDonald can be heard talking in loud
and angry tones to Guilbault and Clark, while Guilbault and Clark
remained calm and spoke quietly.  A woman sitting near the stands
asked them to stop arguing because children were in the area.
Clark decided not to arrest MacDonald at the baseball field
because he was a coach and the players and their parents were
nearby.

Clark began to write a report of the baseball field
incident.  He discussed the incident with other officers and
decided that probable cause existed to arrest Michael MacDonald.
During this time, visitation exchanges of the Guilbault children
were being made at the Windham police station.  On July 20,
Guilbault called his attorney, the Windham police, and a witness
to the baseball field incident.  Clark completed his report on
July 23, 2004.

On July 26, Clark completed an affidavit in support of his
request for a warrant to arrest Michael MacDonald on a disorderly
conduct charge, a violation of RSA § 644:2.  Clark received an
arrest warrant the same day.  On August 1, Clark and another
officer went to MacDonald's home to arrest him.  He was in the
process of making dinner when the officers arrived.  MacDonald
was arrested, transported to the station, held in a cell, and
then released on bail.  He was found not guilty following a one-

3

day bench trial on January 18, 2005.

The MacDonalds filed their complaint on June 30, 2006.[2] Marisol brought only a state law claim for loss of consortium, which is not at issue here, and therefore, this order refers to the claims brought by Michael MacDonald ("MacDonald").

In Count I, brought pursuant to 42 U.S.C. § 1983, MacDonald alleged that Clark committed a laundry list of misconduct related to his arrest and prosecution.  MacDonald alleged that Clark's misconduct violated his federal constitutional rights, "including, but not limited to, freedom from unreasonable seizure of his person under the Fourth Amendment, freedom of liberty, freedom from false accusations, due process and equal protection under the Fifth and Fourteenth Amendments, privileges and immunities under Article IV and the Fourteenth Amendment, freedom from malicious prosecution and freedom from intimidation and humiliation."  Compl. ¶ 56.  He also alleged that Clark conspired to deprive MacDonald of his constitutional rights.

Count II was brought under 42 U.S.C. § 1985.  MacDonald alleged that Clark and Guilbault conspired "for the purposes of obstructing justice and depriving [MacDonald] of several constitutional rights."  Compl. ¶ 60.  The constitutional rights

---

[2]The MacDonalds are represented by counsel.  In addition, Michael MacDonald is a practicing attorney.

are the same as those alleged in paragraph 56 of Count I, which is quoted above.  MacDonald alleged a claim against Windham under § 1983 in Count III, again reciting the same alleged torts arising out of MacDonald's arrest and suggesting vicarious liability for Clark's actions.

As the court noted in the order granting summary judgment, despite the prolix nature of their complaint, the MacDonalds' objection to summary judgment focused on the single constitutional issue of a lack of probable cause to arrest Michael on a charge of disorderly conduct.  MacDonald argued that a single incident could support municipal liability and ignored the defendants' challenge to his claim in Count II under § 1985. The remaining constitutional issues raised in the complaint were deemed waived.[3]  Summary judgment was granted in favor of Clark, Windham, and Guilbault on the federal claims because MacDonald failed to show a factual dispute as to whether he suffered a constitutional violation actionable under the civil rights laws.

---

[3]Similarly, in their final pretrial statement the MacDonalds characterized Michael's civil rights claims as "seeking compensatory damages for financial losses, emotional distress and other damages, including punitive damages, against the Defendants for violating Michael's constitutional rights by arresting him without probable cause."  F. Pre. St. 1-2.

Standard of Review

"Prevailing defendants in an action brought under 42 U.S.C. § 1983 may be granted attorneys' fees only upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Rossello-Gonzalez v. Acevedo-Vila, 483 F.3d 1, 6 (1st Cir. 2007) (internal quotation marks omitted).  In making that assessment, the plaintiff's claims are to be viewed at the time the complaint was filed, not in light of the plaintiffs' ultimate lack of success on the claims.  Id.  A claim is frivolous if the plaintiff lacked factual support for the essential elements of the claim at the time the complaint was filed.  Andrade v. Jamestown Housing Auth., 82 F.3d 1179, 1192-93 (1st Cir. 1996).

I.  Randy Guilbault

As is noted above, MacDonald alleged pursuant to § 1985 that Guilbault conspired with Clark "for the purpose of obstructing justice and depriving Plaintiff Mr. MacDonald of several constitutional rights."  Compl. Count II.  Summary judgment was granted in Guilbault's favor because MacDonald failed to show a material factual dispute as to whether a constitutional violation had occurred.  Guilbault contends that the claim against him was frivolous.

6

Section 1985 prohibits conspiracies in particular circumstances, which are addressed in the three subparts of the statute.  See Donahue v. City of Boston, 304 F.3d 110, 122 n.9 (1st Cir. 2002).  Section 1985(1) pertains to preventing federal officers from performing their duties, which is not applicable to the circumstances alleged in the complaint.  Section 1985(2) pertains to conspiracies to interfere with federal court proceedings and conspiracies to interfere with state court proceedings "with intent to deny any citizen the equal protection of the laws."  Section 1985(3) pertains to conspiracies for the purpose of "depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws."  Claims under § 1985(2) pertaining to state court proceedings and under § 1985(3) must allege "that the conspiracy was motivated by some racial or perhaps otherwise class-based, invidiously discriminatory animus."  Maymi v. P.R. Ports Auth., --- F.3d ---, 2008 WL 240376 at *7 (1st Cir. Jan. 30, 2008) (internal quotation marks omitted); Diva's Inc. v. City of Bangor, 411 F.3d 30, 38-39 (1st Cir. 2005).

MacDonald did not specify which part of § 1985 he intended to rely on in support of his claim against Guilbault.  The parts of § 1985 that pertain to federal court proceedings have no relevance to MacDonald's claim.  The complaint includes no

7

allegations that MacDonald is a member of a racial minority or
any suspect class that would be protected by § 1985 or that
Guilbault was motivated by invidiously discriminatory animus.
Therefore, MacDonald's conspiracy claim under § 1985 against
Guilbault was patently frivolous when the complaint was filed.
See Hennessy v. City of Melrose, 194 F.3d 237, 244 (1st Cir.
1999); Andrade, 82 F.3d at 1192 (awarding attorneys' fees to
defendant due to frivolous claim under § 1985).

Guilbault is entitled to an award of his reasonable
attorneys' fees and costs expended in defense of MacDonald's
claim against him.


II.  Officer Clark and the Town of Windham

Acknowledging the high standard applicable to awarding fees
to prevailing defendants, Clark and Windham contend that they are
entitled to an award because MacDonald's theory that probable
cause was lacking to arrest him was frivolous in light of his own
videotape of the incident.  Clark and Windham also point out that
MacDonald is a practicing attorney who is familiar with the
concept of probable cause.  In response, MacDonald asserts that
he disagrees that the videotape shows that he raised his voice
and emphasizes that he was found not guilty on the charges
brought against him.  He argues, again, that probable cause was

lacking for the arrest.

A.  Clark

     MacDonald alleged federal claims against Clark in Count I,
under § 1983, and in Count II, under § 1985.  As is discussed
above, the conspiracy claim under § 1985 in Count II is
frivolous.  In responding to the motion for summary judgment,
MacDonald jettisoned most of his allegations against Clark in
Count I, limiting his claim to the issues of whether probable
cause existed to support his arrest and Clark's alleged
conspiracy with Guilbault to arrest and prosecute MacDonald.[4]

     1.  Conspiracy

     "To demonstrate conspiracy under § 1983, plaintiff must show
an actual abridgement of some federally-secured right."  Torres-
Rosado v. Rotger Sabat, 335 F.3d 1, 14 (1st Cir. 2003).  In
addition, the plaintiff must allege an agreement between the
defendants to inflict a violation of the plaintiff's
constitutional rights.  Earle v. Benoit, 850 F.2d 836, 844 (1st
Cir. 1988).  A conspiratorial agreement is "defined as a

_____

     [4]MacDonald alleged a conspiracy against Clark under § 1983
in Count I, along with the § 1985 conspiracy in Count II.  The
only federal claim against Guilbault is the § 1985 conspiracy.

combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong or injury upon another."  Alexis v. McDonald's Rests. of Mass., 67 F.3d 341, 356 (1st Cir. 1995).

In a paragraph titled "Evidence of a conspiracy," MacDonald argued that his conspiracy theory was factually sound because Guilbault made twenty-six calls to the Windham police between April and July of 2004, because Clark attempted to help Guilbault regain visitation rights, because another Windham police officer who was called for one of the visitation incidents told the MacDonalds that Clark was angry at Michael, because a third officer "baselessly claimed that Marisol had assaulted him," and because Guilbault said to MacDonald, "Go ahead, take a swing at me."  Obj. at 6.  Even if true, none of those allegations support an agreement between Clark and Guilbault to violate MacDonald's constitutional rights.

Guilbault's calls to the police for assistance during the visitation exchanges have a legitimate explanation in light of the hostile reception he faced from the MacDonalds, as shown on the videotape.  The participation of different police officers, not Clark alone, in those incidents undermines an inference of a conspiracy between Guilbault and Clark.  The statement by another

10

officer, not Clark, that Marisol assaulted him also does not
support a conspiracy theory.[5]  The charge that Clark "called DCYS
to see what Guilbault could do in order to regain his visitation
rights" is not supported by the record.[6]

2.  Constitutional Violation

To state a colorable claim that he was arrested without
probable cause in violation of the Fourteenth Amendment,
actionable under § 1983, MacDonald was required to allege facts
to show that Clark lacked probable cause to arrest him for
disorderly conduct.  See Cox v. Hainey, 391 F.3d 25, 30 (1st Cir.
2004); Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 9 (1st Cir.
2004).  MacDonald rehashes his arguments made in opposition to
summary judgment to show that he was arrested without probable

---

[5]The videotape shows Marisol angrily arguing with and
gesticulating toward a Windham police officer.  Marisol admits
having touched the officer's arm in the course of her argument
with him.  The MacDonalds apparently dispute the police officer's
interpretation of Marisol's actions as assault.

[6]They cite Clark's deposition.  Contrary to the MacDonalds'
statement, Clark testified that after a rancorous encounter with
Marisol and Michael about Guilbault's visitation with his
children, Guilbault asked Clark what he could do to report the
living conditions for his children because Marisol was then
challenging Guilbault's visitation rights.  Clark contacted DCYF
and explained both situations.  The parties have agreed that
Guilbault had visitation rights, so there was no need for
Guilbault to ask Clark to help him regain rights he already had.

cause.  As noted in detail in the court's order granting summary judgment in favor of the defendants, MacDonald's view of the incident differs from that portrayed on his own videotape.

The verdict in MacDonald's favor on the charge of disorderly conduct does not undermine the previous probable cause determination.  "Probable cause for an arrest exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators."  United States v. Brown, 500 F.3d 48, 56 (1st Cir. 2007).  In contrast, an accused will be found guilty on a charge of disorderly conduct only if the fact finder concludes beyond a reasonable doubt that he committed the offence.  State v. Gaffney, 147 N.H. 550, 554 (2002).  Therefore, probable cause can exist when the circumstances do not support a guilty verdict.

Probable cause, however is an amorphous concept that does not have a technical or precise definition, and MacDonald perceived the events at the baseball field in a different light.  See Maryland v. Pringle, 540 U.S. 366, 370–71 (2003).  MacDonald also makes much of the delay between the July 8 incident and Clark's decision to arrest him.  It appears that those engaged in disorderly conduct are generally arrested on the spot, which

12

would support MacDonald's view that the delay was unusual.  <u>See,</u>
<u>e.g.,</u> <u>Abraham v. Nagle</u>, 116 F.3d 11, 13 (1st Cir. 1997); <u>Parker</u>
<u>v. City of Nashua, N.H.,</u> 76 F.3d 9, 11 (1st Cir. 1996);
<u>Malachowski v. City of Keene</u>, 787 F.2d 704, 713 (1st Cir. 1986).
Taking into account the imprecise template for probable cause,
MacDonald's view of the incident at the baseball field, and the
delay between the incident and the arrest, MacDonald's § 1983
claim against Clark was colorable and, therefore, not frivolous.
However, at best this was a very close question.

In summary, MacDonald's conspiracy claims under § 1985 and §
1983 against Clark were frivolous.  The claim under § 1983
against Clark that MacDonald was arrested without probable cause
was unsuccessful but not patently frivolous.

B.  <u>Windham</u>

In support of his § 1983 claim against Windham, MacDonald
alleged that Clark was an agent, servant, or employee of the town
and was acting within the scope of his employment under
established town policies, rules, regulations, and customs.  He
further alleged that Windham participated in a pattern of
negligent or intentional conduct, which was the same list of
misconduct as alleged in Count I against Clark.  MacDonald
asserted that the town "knew or should have known of the fact

13

that this pattern of conduct was being carried out by its agents, servants, and/or employees and in particular Clark . . . ." Compl. ¶ 71.  MacDonald also alleged that the town's failure to train its officers was "a sign of recklessness and gross negligence and exhibits deliberate indifference  . . . which is a shock to the conscience of all people."  Compl. at ¶ 73.

A claim under § 1983 against a municipality cannot be based on a theory of vicarious liability.  Monell v. Dep't Social Servs., 436 U.S. 658, 691 (1978).  Instead, a municipality may be liable under § 1983 only when actions pursuant to its policies or customs caused a constitutional violation.  Whitfield v. Melendez-Rivera, 431 F.3d 1, 9 (1st Cir. 2005).  "A city's policy of inadequately training its police force can serve as a basis for § 1983 liability if the city's failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  Id. at 9-10 (internal quotation marks omitted).  Deliberate indifference means that the town failed to provide adequate training "notwithstanding an obvious likelihood that inadequate training will result in the violation of constitutional rights."  Id. at 10.  The lack of training must also cause constitutional injury.  Id.

As stated, MacDonald's claim against Windham lacks factual allegations to support municipal liability and, instead, is based

14

on a theory of vicarious liability, which is frivolous.  To the
extent MacDonald suggested in the complaint that he was arrested
without probable cause based on a town policy or lack of adequate
training, he provided no factual allegations to support that
theory or to show the required element of deliberate
indifference.  MacDonald has not demonstrated or even suggested
in the objection to the motion for fees that at the time the
complaint was filed he had facts to support the claim against
Windham.  Therefore, the claim against Windham was frivolous when
the complaint was filed.

III.  Award of Fees and Costs

     Whether to award attorneys' fees to prevailing defendants is
a matter left to the court's discretion.  Rossello-Gonzalez, 483
F.3d at 6-7.  A defendant may be awarded attorneys' fees when
some, although not all, of the claims against him were frivolous.
See Andrade, 82 F.3d at 1193 & n.9.  In addition, certain
circumstances particularly support an award of fees.  See Tang v.
State of R.I., Dept. of Elderly Affairs, 163 F.3d 7, 14 (1st Cir.
1998) ("finding bad faith makes a fee award to the defendant more
likely"); Andrade, 82 F.3d at 1185-86 (granting defendants
attorneys' fees on frivolous claims despite plaintiff's success
on other claims).

The court is well aware of the circumstances underlying the claims in this case that involve a rancorous family dispute over child custody and visitation rights in a highly-charged relationship between the parents.  The Windham police wisely advised Michael MacDonald not to get involved in Marisol's dispute with Guilbault about their children, but he failed to follow that advice.  Instead, he became embroiled in the family's problems and behaved in a confrontational manner with the police and Guilbault.  These circumstances strongly suggest that the MacDonalds might have pursued the claims against Clark, Windham, and Guilbault because of their hostility toward the defendants, who, based on the facts presented to the court, behaved in a remarkably restrained manner under difficult circumstances. Although not all of the claims brought against the defendants in this case were patently frivolous, an award of attorneys' fees to Clark and Windham is appropriate for the time expended defending the frivolous claims.

42 U.S.C. § 1988(b) allows the court to award a prevailing party in an action brought pursuant to § 1983 and § 1985 "a reasonable attorney's fee."  The amount awarded is calculated by the lodestar method that requires scrutiny of the attorneys' contemporaneous billing records to find the number of compensable hours which, once determined, is multiplied by the prevailing

hourly rate in the community.  <u>Bogan v. City of Boston</u>, 489 F.3d
417, 426 (1st Cir. 2007).  The prevailing rate in the community
is based on the qualifications, experience, and specialized
competence of the attorneys representing the prevailing parties.
<u>Gay Officers Action League v. Puerto Rico</u>, 247 F.3d 288, 295 (1st
Cir. 2001); <u>Andrade</u>, 82 F.3d at 1190.  The lodestar amount may
then be adjusted to reflect other factors such as the degree of
success achieved.  <u>Bogan</u>, 489 F.3d at 426.

A.   <u>Guilbault</u>

Guilbault's attorney, Steven A. Bolton, states that he spent
92.5 hours on this case and represents that his usual billing
rate is $200 per hour.  He seeks a total of $18,500 for his fees,
$75.00 for one hour of paralegal time, and $1090.75 in costs.  In
support of his hourly rate, Bolton states only that he is a
member of the New Hampshire bar and the bar of this court and
that he has been practicing since 1981.

The MacDonalds do not contest the hourly rate for Bolton's
core work on the case.  They do contest the adequacy of his
billing records.  In particular, the MacDonalds argue that the
records impermissibly bill the full hourly rate for both core and
noncore work, that the records are incomplete, and that they lack
sufficient descriptions of the work done.

17

In scrutinizing the attorney's billing records, the court must exclude duplicative, unproductive, and excessive time that was billed.  Bogan, 489 F.3d at 426.  Generally time spent by an attorney on less productive tasks is not compensated at the full hourly rate.  Brewster v. Dukakis, 3 F.3d 488, 492 (1st Cir. 1993).  The party seeking fees bears the burden of showing that the amount requested is reasonable.  Cerqueira v. Am. Airlines, Inc., 484 F. Supp. 2d 241, 250 (D. Mass. 2007).

Bolton submitted his affidavit in support of Guilbault's request for attorney's fees.  With the affidavit, Bolton filed three exhibits which provide his billing records for the case.[7] Guilbault did not respond to the MacDonalds' objection that the billing records are insufficient to support the request for fees. After reviewing Bolton's records, the court agrees that they are not sufficiently differentiated among subject matter and include billing for time that should not have been billed at the full rate, such as time spent on telephone calls and traveling.

Guilbault seeks a total of $18,575.00 in fees.  That amount is reduced by twenty-five percent to account for the time spent on non-core activities.  Attorney's fees are awarded in the

---

[7]Bolton filed the billing records in an oversized format, in violation of the local rules, which made them difficult to access.  LR 5.1(a).

amount of $13,931.25, and costs of $1090.75 are also awarded.

B.  <u>Clark and Windham</u>

Clark and Windham were represented by the same counsel, Brian J. S. Cullen, who is an attorney with the law firm of Devine, Millimet, and Branch, P.A.  Other lawyers in that firm also worked on the case.  The hourly rates charged by counsel were:  Donald E. Gardner – $170, Brian J. S. Cullen – $165, Danielle L. Pacik – $130, Heidi D. Ames – $130, Shelagh C. Michaud – $155, and Catherine M. Costanzo – $150.  A paralegal also worked on the case and charged $78.97 per hour.  Clark and Windham seek a total of $34,806.50 in fees and $826.74 in costs.

The MacDonalds dispute the hourly rates charged by Ames, Michaud, and Costanzo as not being properly supported by affidavits.  Clark and Windham acknowledged the dispute in their reply but did not provide any further support for those rates other than to argue that the rates are similar to those charged by the MacDonalds' counsel for an associate's time.  Although the hourly rates were not properly supported, they do not appear to be out of line with the norm in this district.  Furthermore, the time spent on the case by those three attorneys was minimal.

The MacDonalds also dispute the amount charged for noncore matters.  Clark and Windham respond that their counsel's rates

19

are already discounted so that no further discount would be warranted.  Clark and Windham are mistaken that their counsel are entitled to the full hourly rate for work involving noncore matters such as travel, administrative work, and preparing the fee application.

Clark and Windham submitted twenty-seven pages of billing records with between fifteen and twenty entries per page.  Review of counsel's billing records shows many entries for time spent on matters that cannot be compensated at the full hourly rate.  Therefore, the time claimed will be discounted for time spent on matters that should not be billed at the full hourly rate.

Clark and Windham seek $34,806.50 in fees and $826.74 in costs.  To account for the time spent on the nonfrivolous claim against Clark, the requested fees award is reduced by 20%.  The amount is then further reduced by 10% to account for time spent on noncore matters.  The amount of attorneys' fees awarded is $24,364.55, and the costs requested, $826.74, are also awarded.

<u>Conclusion</u>

For the foregoing reasons, the defendants' motions for attorneys' fees and costs (documents no. 67 and 68) are granted to the extent that Guilbault is awarded $13,931.25 in fees and $1090.75 in costs, and Clark and Windham are awarded $24,364.55 in fees and $826.74 in costs.  The plaintiffs' motion for leave to file a surreply (document no. 83) is granted, and the surreply was considered.


SO ORDERED.


**_/s/Joseph A. DiClerico, Jr._**
Joseph A. DiClerico, Jr.
United States District Judge

February 26, 2008

cc:
Benjamin L. Falkner, Esq.
James B. Krasnoo, Esq.
Paul J. Klehm, Esq.
Brian J.S. Cullen, Esq.
Steven A. Bolton, Esq.